## No. 1187.

HELEN STAFFORD AND CURATOR *ad litem* vs. SUCCESSION OF W. S. McINTOSH.

### (Consolidated with)

### OPPOSITIONS TO ACCOUNT OF ADMINISTRATOR.

The fees of an attorney for services rendered in the defense of suits against a tutor, on account of debts of a minor's parents, are a legitimate charge against the succession of the parents.

When the proof shows that an administrator has used an honest endeavor to protect the interest of the succession and the heirs, the maxim *contra spoliatorem omnia presumuntur* does not apply.

Unless it has been shown that a succession representative has neglected his duty and has not used an honest effort to collect rents, he cannot be mulcted in damages therefor, but he *must* account for *all* he has received.

APPEAL from the Twenty-Seventh District Court, Parish of Richland. *Williams*, J.

*David Todd* for Plaintiff and Appellant.

*R. G. Cobb* and *J. H. Toler* for Defendant and Appellee.

The opinion of the Court was delivered by

WATKINS, J.  The historical facts of this controversy will be more easily understood by a recital of them in the narrative form, in so far as they exercise a material bearing thereon.

I. Q. C. Stafford, surviving husband of Margaret Stafford, resided, and did business as a country merchant, in Richland parish, for several years, and, his affairs becoming embarrassed, the latter obtained a judgment of separation of property against him in January, 1871, and he made to her, in satisfaction of her claims, a *dation en paiement*, among other things, of his undivided one-half interest in the stock of merchandise of the firm of Stafford & Co., of which he was a member.

This firm was subsequently dissolved, and she assumed control of the business in her own name and continued it up to the date of her death, on the 10th of August, 1872.

Helen Stafford — the present plaintiff — then a minor, was called to her succession, as her sole surviving issue and heir at law; and her father was at once qualified and confirmed as her natural tutor.

The inventory he caused to be taken showed the total value of the estate of M. Stafford to be $31,295 86, "subject to debts, $14,649 17;" and of the total value of assets, the rights and credits represented the sum of $23,906 11.  These consisted of ordinary mercantile accounts, that appear to have been wholly unsecured, and, though manifestly of little value, were appraised at their face.

The stock of goods was put at $1200; personal property at $1869 74; and the real estate at $4820.  The last item consisted of eighty acres of woodland, appraised at $4 per acre, and which was subsequently sold for a much smaller sum; the "White-store" and one acre of land, appraised at $1500, was worth in 1876 only $500; the Helen plantation, valued at $2000, worth in 1876 $1500; and a strip of 190 acres of land, adjacent to the "White-store," valued at $1000.  During the administration of Stafford, tutor, the improvement known as the "Stafford Mansion" was erected upon this last mentioned tract of land, and twenty acres were segregated therefrom and attached thereto, and in 1876 it was valued at $3000.

He also acquired during his administration, in the name of the minor, the Beret place and a half interest in the Cherry-Bluff place, both of which are valued at about $600.  A policy of life insurance adds to the value of the minor's estate $1400, and altogether an in-

crease is shown, in the value of the minor's estate, of $2065 25; yet it did not equal the actual depreciation in other real estate, in the meanwhile.

In the interval between the date of his qualification and that of his death, Stafford, tutor, became involved in various law suits, many of which were brought by the commercial creditors of the plaintiff's deceased mother— and by which he was greatly harassed and annoyed, and through the instrumentality of which, in a great measure, the affairs of the estate he represented were left, at his demise, in a crippled and embarrassed situation. Appreciating the great difficulty of it, Stafford made an informal will, in which he requested W. S. McIntosh,— a highly respected citizen of the vicinity — to undertake the care of his, then, infant daughter, and the administration of her estate, and in pursuance thereof the latter applied for and was appointed to those trusts in August, 1876.

He caused two separate inventories to be taken. That of the *separate acquisitions* of the minor amounted to $2017 25, and that of Mrs. M. Stafford amounted to $7596 93. Taken together they show a *loss in value* of $21,681 68.

His respective administrations continued until the 21st of December, 1883 — the date he surrendered the real estate and the residue of personal property to the agent of the plaintiff, by a notarial act— though he departed this life on the 11th of March, 1884. The only account McIntosh ever filed of his gestion was the one he presented on the 28th of August, 1882, in obedience to an order of court provoked by her *curator*.

Soon after the death of McIntosh, D. T. Chapman was qualified as the administrator of his estate, and Helen Stafford — having been emancipated and joined by a curator *ad litum* — filed this suit; rather, she inaugurated the proceedings, which have brought up for review Dr· McIntosh's tutorship and administration, of very nearly seven years. She makes claim for the large sum of $30,000, and the principal part of this is on account of the *supposed large* value of the rights and credits that are mentioned above, as having only a *nominal* one. The proof in the record fully establishes that this demand is entirely groundless. Indeed there seems to have been a strong probability of Mrs. Stafford's succession having been brought to the verge of insolvency during the administration of his predecessor. Before his death, McIntosh surrendered to the agent of plaintiff all of the real estate mentioned in each of the two inventories he had taken. During the period of his administration, he diligently addressed himself to

the settlement and adjustment of those claims and suits which had so embarrassed, and well-nigh bankrupted the estate under the administration of Stafford, tutor ; and, by his assiduous efforts, and unremitting zeal, he succeeded in relieving the estate from those complications and satisfied most all of the complaining creditors, and enabled the minor, upon her emancipation, to go into peaceable possession of a fair inheritance.

Instead of the evidence disclosing reckless disregard of the rights of the minor, and the maladministration of her estate, it is in proof, by witnesses of high character and of unimpeachable veracity, that Dr. McIntosh's administration was, at all times, and in every respect, characterized by an *honest* and *earnest* desire to *protect* and *defend* the best interest of his ward, to the uttermost. This was the *result* 'and *general* effect of his gestion. An examination of his accounts shows that the taxes have been paid ; the minor was sent to Nashville, Tennessee, and educated at a good school ; the rents upon some of her property have been regularly collected and accounted for, and some valuable property acquired for her account, and of which she is now in the enjoyment and possession. During the term of his administaation he succeeded in restoring to the estate the Helen plantation — one of its most valuable properties — that had, by means of certain irregular proceedings, passed into the possession and apparent ownership of certain creditors of Stafford, tutor ; and, in the accomplishment of which he expended $635, for which he is entitled to credit, in reimbursement.

The plaintiff challenges the correctness of the McIntosh accounts, mainly on the following grounds, viz :

1. She claims that he has failed to charge himself with the rents of the Helen plantation for any part of the time it was under his administration, and on that score he is chargeable with the amount thereof, $3000, with interest.

2. She opposes the allowance of the item for gin-stand, press and fixtures placed on the Helen place, $369.

3. Also fees due to Cobb & Gunby for services rendered by them during two last years of the administration of Stafford, tutor, and by them retained out of collections made by them, $500.

4. Fees of same counsel for opening the succession of M. Stafford, and having McIntesh qualified, and the inventories taken, $500.

5. Other fees aggregating $600, in different independent suits during *last* administration.

She likewise objects to various smaller items of credit that appear on his accounts, but which need not be detailed particularly.

1. There is nothing charged on the accounts against McIntosh for the rents or revenues of the Helen plantation during his administration of it, which terminated on the 31st of December, 1882. The rents for which he may be chargeable are those of 1877 to 1882 — say six years. The plaintiff's opposition only claims that there are one hundred acres of open land on the place, and the property is situated on Bayou Bœuf. The proof shows that the administrator collected the rents for only a portion of the time, and that $200 per acre would be a fair rental, approximating $150 per annum. We have been unable to arrive at any *exact* figures, or to make any *positive* estimate of the amount due, but are of the opinion that $150 per year, for three years, would be a just and proper allowance on that score.

2. With regard to this item of $369 for the gin-stand, press, etc., we do not regard plaintiff's claim equitable or well founded. The administrator seemed to have used his best endeavors to keep the plantation in good shape, and this *small* investment was well intended and well directed, and doubtlessly inured to the benefit of the plantation.

3. The $500 charged for attorneys' fees in various suits — about twenty in number, some in the parish, and others in the district court — does not seem unreasonable in amount; and the testimony is in keeping with the statement. It is true that those fees were incurred in litigation that was carried on during the administration of her father; but we think it is fairly shown that if he had not *resisted* the torrent of litigation that set in upon him, the debts of her mother — and which are mentioned on the first inventory of her estate — would have *swept all the property away;* and she is the sole beneficiary of the results.

That item must be allowed.

4. The fees of same counsel for services rendered McIntosh, administrator, for opening the succession and superintending the taking of the inventories, appears to us to be excessive, and should be reduced to two hundred dollars.

5. The remaining fees charged in the different suits mentioned are not objectionable.

We do not feel disposed to be critical in casting up the accounts of an administrator who has acted in such perfect good faith, and has fulfilled the trust confided to him by the *plaintiff's father,* in conformity to his best interest.

The demands of defendant for an increase of judgment in his favor cannot be *listened* to nor allowed.

It is therefore ordered, adjudged and decreed that the judgment appealed from be amended and increased, in favor of the plaintiff, in the sum of seven hundred and fifty dollars, and that as thus amended same be affirmed with costs against the succession of M. Stafford.

Mr. Justice Todd takes no part in this opinion.